UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

August 23, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Julie Y. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-2447-CDA

Dear Counsel:

On September 7, 2023, Plaintiff Julie Y. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 12, 16, and 21). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 23, 2017, alleging a disability onset of October 1, 2008. Tr. 175-187. Plaintiff's claims were denied initially and on reconsideration. Tr. 133-40, 142-45. On May 17, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 32-72. Following the hearing, on August 19, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 10-31. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constituted the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a). Thereafter, Plaintiff appealed to this Court, and on September 23, 2021, the Court remanded the case to the Commissioner for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g). Tr. 593-97. Accordingly, the Appeals Council vacated the decision and remanded the case to an ALJ. Tr. 599-603. A second hearing occurred on February 22, 2023. Tr. 558-92. On June 8, 2023, the ALJ rendered

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on September 7, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

Julie Y. v. O'Malley
Civil No. 23-2447-CDA
August 23, 2024
Page 2

their decision denying Plaintiff's claims for DIB and SSI. Tr. 533-57. Having exhausted all administrative remedies, Plaintiff filed this second appeal.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since October 1, 2008, the alleged onset date[.]" Tr. 538. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "attention deficit hyperactivity disorder (ADHD); learning disorder; neurodevelopmental disorder; posttraumatic stress disorder (PTSD); and mild facet arthropathy from L4-S1[.]" Tr. 539. The ALJ also determined that Plaintiff suffered from the non-severe impairments of vertigo, status post right shoulder arthroscopy, hepatic lesion, status post hysterectomy and bilateral salpingectomies, mild levoscoliosis in the lumbar spine, and degenerative changes of the sacroiliac joint. Tr. 539. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 539. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps and stairs and balance but never climb ladders, ropes, or scaffolds; she is limited to performing simple, routine, repetitive tasks not performed at a production rate pace meaning no assembly line work or hourly quotas and work performed at a consistent pace; she can follow simple instructions but not make work related decisions; she can have occasional contact with supervisors and coworkers but only have contact with the public 5% of the time; and she can never be exposed to moving mechanical parts or unprotected heights.

Tr. 542. The ALJ determined that Plaintiff was unable to perform past relevant work as a receptionist (DOT[3] #237.367-038) but could perform other jobs that existed in significant numbers

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of*

in the national economy. Tr. 549-51. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 551.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff avers that the ALJ erred at step two by failing to properly analyze the severity and duration of Plaintiff's right shoulder impairment. ECF 12, at 8. Plaintiff argues that her shoulder impairment should have been found to be a "severe" impairment. *Id.* Second, Plaintiff contends that her right shoulder impairment would have resulted in Plaintiff being limited "in her ability to lift, carry, reach, push, and pull for a period of at least twelve months." ECF 12, at 13. Plaintiff argues that the ALJ failed to include any exertional limitations "whatsoever for any time period from Plaintiff's alleged onset date through the date of this decision," infecting the RFC. ECF 12, at 13. Defendant counters that (1) the ALJ properly found that Plaintiff's right shoulder impairment was not severe and (2) the ALJ reasonably found that Plaintiff could perform a reduced range of work at all exertional levels. ECF 16, at 6, 10.

The Court begins with Plaintiff's argument regarding the determination of her shoulder impairment. "At step two of the five-step sequential evaluation, the ALJ determines if the claimant has an impairment, or a combination of impairments, that is severe and meets the duration requirement." *Sharon W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2707, 2019 WL 2234499, at *1 (D. Md. May 23, 2019). An impairment is "severe" if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). If the ALJ finds any impairment to be severe, "the ALJ continues with the sequential evaluation and

---

*Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

considers how each of the claimant's impairments impacts her ability to perform work." *Sharon W.*, 2019 WL 2234499, at *1.  In formulating a claimant's RFC, the ALJ "consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe' . . . ."  20 C.F.R § 404.1545(a)(2); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(a)(2), 416.945(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  The RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (italics omitted) (recognizing that step two of the sequential evaluation process is "merely a threshold determination meant to screen out weak claims" and is "not meant to identify the impairments that should be taken into account when determining the RFC").

Despite Plaintiff's contention, the ALJ supported their step-two analysis of Plaintiff's right shoulder impairment with substantial evidence.  The ALJ concluded that Plaintiff was "status post right shoulder arthroscopy" when she "underwent right shoulder surgery in March 2019 . . . however, [the] records [did] not show [that Plaintiff's] impairment[] resulted in continuous functional limitations for more than 12 months[.]"  Tr. 539.  The ALJ supported this conclusion when discussing Plaintiff's MRI of her right shoulder in February 2019.  Tr. 544.  The MRI "showed high grade possibly full-thickness bursal surface tear of supraspinatus and infraspinatus tendons, subacromial subdeltoid bursitis, tendinosis, and mild long head biceps tenosynovitis[.]"  Tr. 544.  The ALJ noted that "X-rays taken a week prior showed degenerative changes in the right shoulder[.]"  Tr. 544.  Plaintiff then underwent surgery including "diagnostic arthroscopy, arthroscopic extensive debridement of the glenohumeral joint, arthroscopic acromial decompression, arthroscopic rotator cuff repair, and arthroscopic assisted biceps tenodesis[.]"  Tr. 544.  The ALJ discussed Plaintiff's physical therapy records for her rehabilitation after rotator cuff repair surgery.  Tr. 544-45.  Plaintiff was seen for two rounds of physical therapy and first underwent treatment from April 17, 2019 through July 22, 2019, attending twenty-five visits.  Tr. 544.  After her treatment, Plaintiff followed up with her surgeon at Johns Hopkins on August 2, 2019.  Plaintiff "reported constant worsening pain and significant stiffness" and records showed that "she was not progressing appropriately and additional surgery could be considered as a last resort[.]"  Tr. 544.  Plaintiff returned to physical therapy on October 24, 2019, and attended thirty-two visits through February 13, 2020.[4]  Tr. 544.  Plaintiff "reported shoulder stiffness and pain[,] and improved mobility and pain intensity with physical therapy[.]"  Tr. 544-45.

Given the ALJ's analysis, and Plaintiff's failure to present adequate corroborating evidence, the Court finds that the ALJ adequately explained why Plaintiff's shoulder impairment had no more than a minimal effect for more than twelve months, on her work-related functioning and is therefore non-severe.  *See* SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985) ("[A]n impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability to do basic work activities[.]").  Plaintiff does not identify any hearing testimony in

---

[4] Plaintiff's last physical therapy appointment for her shoulder was on February 13, 2020.  Tr. 544.  Plaintiff was discharged from physical therapy on September 2, 2020 after receiving therapy for low back pain from June 17, 2020 through September 2, 2020.  Tr. 545.

which she reported symptoms of ongoing shoulder pain. Instead, she discussed her ongoing back pain and mental health symptoms. Tr. 543. Additionally, Plaintiff avers that the "notation" in Plaintiff's records that her chronic "shoulder issues [] had already failed conservative measures establishes that the shoulder impairment existed well prior to February 2019" and that "the ALJ failed to identify or consider the material evidence of Plaintiff's shoulder problems leading up to and following her extensive arthroscopic surgery." ECF12, at 9-10. However, Plaintiff presents no such records to support this contention. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). In fact, Plaintiff fails to cite any records following her last physical therapy visit that the ALJ already analyzed. *See* Tr. 548 (stating that there was "no additional treatment for [Plaintiff's] shoulder since physical therapy ended in 2020"). Additionally, Plaintiff cites various interactions with her physical therapist, which the ALJ had already recognized and discussed. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (holding that it is not the Court's role to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ). Thus, the ALJ did not err at step two.

Plaintiff also argues that the ALJ's decision should have included RFC provisions attributable to her right shoulder impairment. Plaintiff alleges, among other things, that this contention is supported by "common sense." ECF 12, at 13. Having found no error at step two, and because Plaintiff does not present any evidence otherwise, the Court does not need to address this argument. *See David P. v. Kijakazi*, No. BAH-22-2745, 2023 WL 5984169, *3, n.5 (D. Md. Sept. 14, 2023) (finding no error at step two, therefore not proceeding with Plaintiff's argument regarding the RFC).

Plaintiff's remaining contentions are unavailing for the same reason. Specifically, Plaintiff avers that (1) that the ALJ did not properly consider "the restrictions imposed by all of Plaintiff's impairments even those that are not severe" such as her back pain and ability to walk, and (2) that it would be reasonable to assume that Plaintiff's back and shoulder pain would cause her to be off-task. ECF 12, at 13-15. But Plaintiff does not suggest that the ALJ failed to evaluate any relevant medical records or testimony relevant to this issue, or that the ALJ failed to resolve any evidentiary contradictions relevant to the issue. For these reasons, Plaintiff's argument amounts to a request to reweigh evidence. This Court cannot entertain such a request. *See Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) ("This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision.") (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, Plaintiff's arguments fail to justify reversal and remand.

The Court's review on appeal is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). As noted above, the Court is may not reweigh evidence or to substitute its own judgment for that of the ALJ. Governed by that standard, the Court rejects Plaintiff's arguments in favor of remand.

*Julie Y. v. O'Malley*
Civil No. 23-2447-CDA
August 23, 2024
Page 6

**V.      CONCLUSION**

      For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

                          Sincerely,

                            /s/

                          Charles D. Austin
                          United States Magistrate Judge